

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| CLIFFORD AUSTIN, | ) | |
| | ) | |
| Appellant, | ) | WD82778 |
| | ) | |
| v. | ) | OPINION FILED:  March 10, 2020 |
| | ) | |
| AM MECHANICAL SERVICES, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| TREASURER OF THE STATE OF | ) | |
| MISSOURI - CUSTODIAN OF THE | ) | |
| SECOND INJURY FUND, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Labor and Industrial Relations Commission**

Before Division Two:  Cynthia L. Martin, Presiding Judge, Thomas H. Newton, Judge
and Gary D. Witt, Judge

Clifford Austin ("Austin") appeals from a final order entered by the Labor and

Industrial Relations Commission ("Commission") denying his workers' compensation

claim which sought temporary total and permanent partial disability benefits from AM

Mechanical Services ("Employer") and permanent total disability benefits from the Second

Injury Fund ("Fund").  The Commission concluded that Austin's workers' compensation

claim was barred because it was filed outside of the three-year statute of limitations described in section 287.430.[1] Because the Commission erroneously declared and applied the law, we reverse and remand for further proceedings consistent with this opinion.

## Factual and Procedural Background[2]

In November 2010, Austin began working for Employer as a sales and service manager. Austin was offered and accepted the job with Employer in a telephone conversation which occurred while Austin was at his home in Missouri. Austin worked, however, at Employer's warehouse in Olathe, Kansas. On March 10, 2011, Austin was injured while climbing a ladder to retrieve a part located on an upper shelf.

Employer's workers' compensation insurer, AMCO Insurance Company ("AMCO"), paid Austin temporary total disability benefits at the rate of $545 per week for 93 weeks from March 11, 2011 through December 21, 2012. This was the applicable weekly wage rate for temporary total disability benefits in Kansas.

On February 28, 2013, a Kansas administrative law judge approved a settlement agreement between Austin, Employer, and AMCO. The settlement agreement required AMCO to pay Austin the lump sum of $49,315 for permanent partial disability benefits. The settlement agreement purportedly provided that Austin was "closing out" all injuries and all claims arising out of his March 10, 2011 workplace accident in all jurisdictions.

---

[1] All statutory references are to RSMo 2000 as supplemented through the date of Austin's injury on March 10, 2011, unless otherwise indicated.

[2] "When reviewing the evidence on the record, we do not view the facts in the light most favorable to the award, nor do we make all reasonable inferences in favor of the award. Rather, we view the facts neutrally." *Tombaugh v. SIF*, 347 S.W.3d 670, 674 (Mo. App. W.D. 2011).

2

On September 23, 2015, Austin filed a workers' compensation claim with the Missouri Division of Workers' Compensation ("Division") arising out of the March 10, 2011 workplace accident. Austin's claim sought additional compensation from Employer, (who was also insured by AMCO in Missouri), in the amount of $11,314.38, representing the difference between Missouri's weekly wage rate for temporary total disability benefits of $666.67 and the weekly wage rate authorized in Kansas. Austin's claim also relied on preexisting disabilities to request an award of permanent total disability benefits from the Fund.[3]

Following a hearing, an administrative law judge ("ALJ") denied Austin's claim. The ALJ found that Austin's claim against Employer was barred by the Kansas workers' compensation settlement agreement, and by the three-year statute of limitations described in section 287.430. The ALJ found that Austin's claim against the Fund was *not* barred by the Kansas workers' compensation settlement agreement, but was barred by the three-year statute of limitations described in section 287.430.

Austin appealed the ALJ's determination to the Commission. The Commission entered its award ("Final Award") affirming the ALJ's determination to deny compensation to Austin. However, the Commission did so with a supplemental opinion that relied solely on the statute of limitations described in section 287.430. The Final Award noted that the

[3]Section 287.220 establishes the Second Injury Fund. The General Assembly created the Second Injury Fund in an effort "to encourage the employment of individuals who are already disabled from a preexisting injury, regardless of the type or cause of that injury." *Treasurer of State-Custodian of Second Injury Fund v. Witte*, 414 S.W.3d 455, 460 (Mo. banc 2013) (quoting *Pierson v. Treasurer of State*, 126 S.W.3d 386, 389-90 (Mo. banc 2004)).

3

Commission did "not endorse the other analysis in the [ALJ's] decision as it is not necessary for the resolution of this matter."

Austin timely appeals.

## Standard of Review

Section 287.490.1 controls our review of the Final Award:

The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

We review the findings and award of the Commission rather than the ALJ, "to the extent that [the Commission's ruling] departs from the ALJ's ruling." *Small v. Red Simpson*, 484 S.W.3d 341, 344 (Mo. App. W.D. 2015). "To the extent that the Commission affirms and adopts the ALJ's findings and conclusions, we review the ALJ's findings and conclusions." *Id.* While we defer to the Commission's factual findings, "'we review issues of law, including the Commission's interpretation and application of the law, *de novo*.'" *Nivens v. Interstate Brands Corp.*, 585 S.W.3d 825, 831 (Mo. App. W.D. 2019) (quoting *Lawrence v. Treasurer of State-Custodian of Second Injury Fund*, 470 S.W.3d 6, 12 (Mo. App. W.D. 2015)).

## Analysis

The sole issue on appeal is whether the Commission erroneously concluded that Austin's claims for Missouri workers' compensation benefits against Employer and the Fund were time-barred pursuant to section 287.430.[4]

Section 287.110.2 provides that "[t]his chapter shall apply to all injuries received . . . outside of this state under contract of employment made in this state, unless the contract of employment in any case shall otherwise provide . . . ."[5] "'Where the applicant accepts an employment offer over the telephone while he is in Missouri, the employment contract is deemed to have been made in Missouri.'" *Small*, 484 S.W.3d at 346 (quoting *Liberty v. Treasurer for State--Custodian of Second Injury Fund*, 218 S.W.3d 7, 10 (Mo. App. W.D. 2007)). The ALJ determined that Austin accepted employment with Employer in Missouri over the telephone. Though the Commission's Final Award did not endorse the ALJ's "analysis" of any issues beyond the statute of limitations, the Commission did not reject any of the ALJ's *factual* findings, many of which were essential to discussion of the statute

---

[4]Austin's Brief also argues that his Missouri workers' compensation claim against Employer and the Fund could not be lawfully barred, settled, or compromised by the Kansas workers' compensation settlement agreement because of section 287.390.1, which provides that no agreement to waive rights under Chapter 287, or to settle or compromise any dispute or claim under Chapter 287, will be valid until approved by a Missouri ALJ or the Commission. We do not address this issue. We are statutorily limited to review of the Commission's Final Award. The Final Award did not deny Austin's workers' compensation claim based on the effect of the Kansas settlement agreement and instead relied solely on the statute of limitations.

[5]The ALJ rejected the Fund's argument that Austin was not permitted to file a claim against the Fund, notwithstanding section 287.110.2, because section 287.220.12 (RSMo 2014) provides that: "No compensation shall be payable from the second injury fund if the employee files a claim for compensation under the workers' compensation law of another state with jurisdiction over the employee's injury or accident or occupational disease." Subsection 12 was added to section 287.220 effective January 1, 2014, and thus after Austin's March 10, 2011 workplace injury. The Fund has not relied on section 287.220.12 on appeal presumably because it recognizes that this amendment to section 287.220 could "change, redefine, or regulate rights in a manner" that is different from the version in effect before January 1, 2014, and thus cannot be retroactively applied barring an expression of legislative intent to the contrary. *See, e.g., Eason v. Treasurer v. State*, 371 S.W.3d 886, 889 (Mo. App. W.D. 2012).

of limitations issue. Accordingly, the Division, as well as the State of Kansas, have jurisdiction over Austin's March 10, 2011 workplace injury.

Section 287.430[6] requires a claim for workers' compensation benefits to be filed with the Division within two years of the date of injury or the "last payment made under this chapter on account of the injury[.]" However, the limitations period of two years is extended to three years from the date of injury or "last payment made under this chapter on account of the injury" when an employer fails to file a "report of the injury . . . as required by section 287.380." Section 287.430. Section 287.380 requires an employer or insurer to file a report with the Division within thirty days of any employee's injury.

Employer and AMCO failed to file a report with the Division within thirty days of Austin's March 10, 2011 workplace injury. As a result, Austin was required to file his claim with the Division by the later of three years after the date of his March 10, 2011 injury or the "last payment made under this chapter on account of the injury." Austin's claim, which was filed on September 23, 2015, was not filed with the Division within three years of his March 10, 2011 injury. The question, therefore, is whether Austin's claim was filed within three years of the "last payment made under this chapter on account of [Austin's] injury."

Austin contends that weekly temporary total disability benefits he was paid through December 2012, and the lump sum settlement payment he received on February 28, 2013

---

[6]" . . . [N]o proceedings for compensation under this chapter shall be maintained unless a claim is filed with the division within two years after the date of injury . . ., or the last payment made under this chapter on account of the injury . . ., except that if the report of the injury . . . is not filed by the employer as required by section 287.380, the claim for compensation may be filed within three years after the date of injury . . . or last payment made under this chapter on account of the injury[.]"

for permanent partial disability benefits, were payments made by Employer or AMCO "under this chapter on account of [Austin's] injury." Employer and the Fund disagree. Resolution of this dispute requires us to determine the meaning of "under this chapter."

This very issue was addressed in *Small*, where an employee filed a claim for workers' compensation benefits in Missouri after receiving workers' compensation benefits in Texas following a Texas workplace injury. 484 S.W.3d at 342-44. *Small* held that any payment made by an employer or its insured to an injured employee to compensate for a category of recovery for which the employer would be obligated under chapter 287 is a payment "under this chapter" on account of the employee's injury regardless the reason for the payment. *Id*. at 346-47.

> Regardless whether Mr. Small received the payments gratuitously, . . . or under the Texas workers' compensation law or a compromise settlement, the payments his employer and its insurer made for his ongoing medical problems directly stemming from the . . . workplace injury were payments the employer was required to make under the Missouri Workers' Compensation Law. Accordingly, the payments were made "under this chapter."

*Id*. at 346.

The Commission acknowledged, but disregarded, the holding in *Small*. Employer and the Fund argued, and the Commission agreed, that *Small* involved a 1995 workplace injury that was subject to the pre-2005 version of chapter 287 which required liberal, and not strict, construction. According to the Commission, the 2005 amendment of Chapter 287 to now require strict construction of chapter 287 necessitates interpreting the phrase "under this chapter" more narrowly than we did in *Small*. *See* section 287.800.1 (RSMo 2005). We disagree.

The Commission improperly pigeon-holed *Small* as a "liberal construction" case, and ignored *Dungan v. Fuqua Homes, Inc.*, 437 S.W.3d 807 (Mo. App. W.D. 2014), which was favorably cited by *Small*. 484 S.W.3d at 346-47. In *Dungan*, the employee's injury occurred in 2008, and was thus subject to the version of Chapter 287 that requires "strict construction." 437 S.W.3d at 808, 812. *Dungan* rejected the argument that strict construction requires the phrase "under this chapter" to be interpreted differently than it had been before the 2005 amendment to Chapter 287. *Id.* at 812 (holding that "the strict construction mandate of section 287.800 does not affect the analysis" regarding the meaning of "under this chapter"). Instead, *Dungan* reaffirmed that a payment made "under this chapter" includes any "payments made by parties with an obligation to make payments under Chapter 287." *Dungan*, 437 S.W.3d at 814 (citing with approval *Brown v. Ozark Christian Schools of Neosho*, 847 S.W.2d 888, 896 (Mo. App. S.D. 1993) (holding that an employer's gratuitous payment for burial expenses tolled section 287.430's statute of limitation when the payment was made by an employer "required by the Workers' Compensation Law to pay the reasonable expense of the employee's burial"); *Bryan v. Summit Travel, Inc.*, 984 S.W.2d 185, 188 (Mo. App. W.D. 1998) (finding that "payment under this chapter" means any payment made by a party having an obligation under Chapter 287) *overruled on other grounds by Hampton v. Big Boy Steel Erection*, 984 S.W.2d 185 (Mo. banc 2003). The Commission erroneously applied "strict construction" to alter the settled meaning of the phrase "under this chapter" as used in section 287.430.

This conclusion is reinforced by general principles of statutory construction. "The primary rule of statutory construction is to ascertain the intent of the legislature from the

8

language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning." *Dickemann v. Costco Wholesale Corp.*, 550 S.W.3d 65, 68 (Mo. banc 2018). "The provisions of a legislative act must be construed and considered together and, if possible, all provisions must be harmonized and every clause given some meaning." *Id*. "The legislature is presumed not to enact meaningless provisions." *Id*.

Here, the Commission's Final Award concluded that strict construction of "under this chapter" requires "a Missouri payment;" that is, a "payment[] made to [an] employee under [Missouri] law." This conclusion is not further explained, though the conclusion was applied by the Commission to find that Kansas workers' compensation payments to Austin were not "Missouri payments," even though they were payments of a nature the Employer would have been obligated to make under Missouri workers' compensation law.

The Commission thus held that based on strict construction of "under this chapter," it is no longer enough for a payment to be of a nature otherwise obligated to be made under Missouri workers' compensation law, and instead a payment must *in fact* have been made pursuant, or subject to, the acknowledged authority of the Division. As the Fund admitted during oral argument, the primary manner in which a payment would *in fact* be made pursuant, or subject to, the acknowledged authority of the Division is after a claim or report of injury has been filed by the employee or employer with the Division.

This interpretation of the phrase "under this chapter" would lead to absurd results. Section 287.430 tolls the statute of limitations for filing a workers' compensation claim for two or three years (depending on whether an employer has filed a report of injury), with the tolling period commencing on the later of the date of injury or the last date of a payment

9

"under this chapter." There would be no reason to alternatively permit the tolling period to file a claim to commence on the last date of a payment "under this chapter" if the only payments eligible to toll the limitations period are those made pursuant, or subject to, a claim or report of injury already filed with the Division.

The Employer also argued that an employer's voluntary payments to an injured employee could be self-designated as "Missouri payments," even without a claim or report of injury having been filed with the Division. But this interpretation would also lead to an absurd result. It would effectively disqualify *all* dual jurisdiction workers' compensation claims from eligibility for tolling based on payments made, even though the General Assembly expressed no such intent in its 2005 amendments to the workers' compensation law.[7]

We conclude, as we did in *Smalls* and in *Dungan*, that the plain and ordinary meaning of "under this chapter" is any payment of a nature required by Missouri workers' compensation law made by a person who would be obligated by Missouri workers' compensation law to make such payments. This plain and ordinary meaning is not altered by principles of liberal or strict construction. Rather, section 287.800.1 "has no impact on the analysis of this case." *Dickemann*, 550 S.W.3d at 68 n. 5. "This Court is no more entitled to ignore the plain and unambiguous meaning of a statute's words under 'strict

---

[7]When the General Assembly intends its amendments to the workers' compensation law to impact the ability to file dual jurisdiction workers' compensation claims, they do so expressly. *See* note 5, *supra* addressing the 2012 amendments to the workers' compensation law to prohibit the filing of certain dual jurisdiction claims against the Fund.

10

construction' than it is under 'liberal construction' or in the absence of such an instruction."

*Id.*

Here, Employer and AMCO made payments on account of Austin's March 10, 2011 workplace injury of a nature that Employer and its insurer were obligated to pay Austin under Chapter 287. Though the payments were not made pursuant to a pending Missouri worker's compensation claim, the payments were nonetheless made "under [Chapter 287]." The payments tolled section 287.430's limitations period. Because Austin filed his Missouri workers' compensation claim against Employer and the Fund on September 23, 2015, within three years of the last of payments made by a party having an obligation to him under Chapter 287, Austin's claim was timely filed.

The Commission committed legal error when it denied Austin's claim on the basis that his claim was untimely filed with the Division pursuant to section 287.430.

Point One is granted.

## Conclusion

We reverse the Commission's Final Award and remand this matter for further proceedings consistent with this opinion.

_____
Cynthia L. Martin, Judge

All concur

11